IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA L. FUSCH,                           Civ. No. 04-1703-HO

                                            ORDER

               Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Plaintiff seeks review of the final decision of the Commissioner denying her application for disability insurance benefits and supplemental security income. Plaintiff contends that the administrative law judge (ALJ) erred by crediting the opinions of non-examining physicians over the opinions of treating and examining physicians, and by not crediting the lay testimony of plaintiff and her witness.

## Discussion

The ALJ provided clear and convincing reasons supported by substantial evidence to find plaintiff not fully credible. The

ALJ accurately interpreted the evidence or absence of evidence regarding plaintiff's complaints of headaches, carpal tunnel syndrome, and back, neck and knee pain. (Tr. 17). Plaintiff reported headaches to her therapist in October, 2000, but not to her physicians. (Tr. 121-28, 196). The only reference to carpal tunnel syndrome in the medical records occurs in the most recent record, Dr. Penner's October 31, 2003 letter to plaintiff's attorney. (Tr. 199-200). Dr. Penner's treatment notes evince no complaint or diagnosis of carpal tunnel syndrome or back or neck impairment. (Tr. 121-28).

The lack of objective medical evidence is a relevant factor in the credibility determination. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Considering the severity of symptoms alleged, the ALJ appropriately considered the absence of documented treatment and diagnosis. Flaten v. Secretary of Health and Human Svcs., 44 F.3d 1453, 1464 (9th Cir. 1995). For example, plaintiff testified that (1) carpal tunnel syndrome precludes typing and limits hand writing to fifteen minutes (Tr. 219), (2) back impairments cause pain all the time, limit sitting to one hour, standing to fifteen minutes, and alternating sitting and standing to four hours, after which time plaintiff must lie down (Tr. 222-23), (3) plaintiff cannot negotiate stairs, falls quite a bit, and fell twice between June and September, 2003 due to her knee impairment (Tr. 223-24), and (4) plaintiff has

2 - ORDER

headaches all day long, precluding her from doing things after midday (Tr. 224).

The ALJ also appropriately considered plaintiff's activities in assessing her credibility. Rollins, 261 F.3d at 857. Plaintiff received unemployment payments from shortly after the alleged onset date of February 1, 2002 until late January or early February, 2003. (Tr. 113-14, 231-32). Plaintiff testified that she applied for jobs three to five times per week, mostly in person. (Tr. 232). The ALJ properly inferred from this evidence that plaintiff considered herself able to work for a significant time after her alleged onset date. An individual must be willing to work full time in order to receive benefits. Or.Admin.R. 471-030-0036(3)(a). The ALJ properly inferred from this evidence, and plaintiff's testimony that she can go to the store and walk her three dogs, that plaintiff is not so limited by her anxiety disorder that she cannot leave her home and perform work with restrictions on public contact and interaction with co-workers.

The ALJ did not reject the lay testimony of Karen Lambden, as plaintiff argues. Rather, he found the testimony inconsistent with allegations of debilitating anxiety. (Tr. 17). Further, the ALJ was reasonably accurate in summarizing Lambden's testimony, except for her statement that periods during which plaintiff is crying and upset last for a few hours. (Tr. 240). The ALJ wrote that Lambden testified that plaintiff's symptoms

last two hours. (Tr. 17). The court finds the discrepancy immaterial.

The ALJ properly rejected Dr. Penner's opinion that plaintiff is disabled by depression and anxiety, and that orthopedic problems prevent plaintiff from working more than six hours a day and lifting more than 20 pounds. The ALJ found the opinion to be inconsistent with the treatment record, plaintiff's job hunting activities and plaintiff's acceptance of unemployment benefits, and therefore assigned little weight to the opinion. (Tr. 18). The ALJ's reasons are specific and legitimate and supported by substantial evidence. As noted, the record reveals no treatment history for carpal tunnel syndrome. Plaintiff told Dr. Blake that her right knee pain limited her walking, but is not severe. (Tr. 155). The record does not contain specific findings demonstrating orthopedic problems precluding sedentary work.

Nor do Dr. Penner's notes indicate disabling anxiety. On August 8, 2001, plaintiff had recently started a job, and felt that was going well. (Tr. 124). On September 25, 2001, plaintiff's affect was bright and animated and she appeared well controlled on her regimen of Celexa and Xanax. (Tr. 123). On January 9, 2002, plaintiff reported difficulty sleeping and concentrating at work, work-related stress and personal stress at work. (Tr. 122). On February 6, 2002, plaintiff reported that

4 - ORDER

she was let go from her employment, but that she could tolerate this stress and maintain her current medication regimen. (Tr. 121).

The ALJ properly rejected Dr. Arnold's opinion that plaintiff's panic disorder precludes work and public contact, and that plaintiff decompensates away from home or under slightly stressful circumstances to the point that she is not functional. (Tr. 188-89). The ALJ found Dr. Arnold's opinion to be inconsistent with plaintiff's activities and treatment record. (Tr. 18). These specific and legitimate reasons are supported by substantial evidence. As noted, plaintiff's stated activities belie an inability to perform all work due to anxiety disorder.

Regarding the treatment record, Dr. Arnold initially assessed plaintiff for panic attacks and depression in October, 2000. (Tr. 196). The assessment notes that plaintiff was then enrolled in school. Id. Dr. Arnold assigned a Global Assessment of Functioning (GAF) score of 50. As of July 11, 2001, plaintiff was working full time in Woodburn. (Tr. 138, 139, 194). Regarding the treatment record after her alleged onset date, Dr. Arnold wrote in his June 19, 2002 assessment that plaintiff is in a good humor, doesn't seem all that depressed, is euthymic clinically, but reports anxiety and depression. (Tr. 133). Dr. Arnold assigned a GAF of "40+," and advised plaintiff to return in two to four weeks. Id. Plaintiff cancelled a July 8, 2002

appointment. Dr. Arnold wrote in an August 28, 2002 progress note that plaintiff's mood is euthymic and that plaintiff seems to be doing well. (Tr. 130). The treatment plan is to continue current medications and return to clinic in four months. Id. On December 23, 2002, Dr. Arnold observed that plaintiff is "[m]ore on edge than I have seen her in quite some time. Having a very difficult day." (Tr. 193). Dr. Arnold maintained current medications because "stresses are almost all completely situational." Id. He further advised plaintiff to see an R.N. in two months and to see him again in four months. Id. On July 16, 2003, Dr. Arnold assigned a GAF of 50, and wrote that he would write a letter to plaintiff's attorney in support of her application for disability benefits. (Tr. 191). Dr. Arnold increased Celexa from 40 mg to 60 mg, maintained plaintiff's prescription for Alprazolam, and prescribed that plaintiff return to the clinic in three months. Id. Plaintiff testified that she stopped seeing Dr. Arnold because she could not afford to continue treatment. (Tr. 226).

Of the three times after plaintiff's alleged onset date that Dr. Arnold recorded observations of plaintiff, only once did Dr. Arnold record an observation that plaintiff was not doing well. (Tr. 193). Plaintiff has a history of employment despite her panic disorder, yet plaintiff's treatment plan is unchanged. This is so even though plaintiff and Dr. Arnold assert that her

panic disorder has worsened to the point of becoming disabling. Dr. Arnold's opinion that plaintiff cannot tolerate contact with the public appears to be largely based on plaintiff's reports. (Tr. 132, 188, 191). As noted, the ALJ properly found plaintiff not fully credible. The ALJ's finding that the treatment record does not support Dr. Arnold's opinion of disabling panic disorder is supported by substantial evidence.

Assuming without deciding that the ALJ erred by crediting the opinions of agency physicians over that of examining physician Dr. Blake, any such error is harmless. Dr. Blake opined that plaintiff can perform light work. (Tr. 158). Crediting Dr. Blake's opinion would not alter the ALJ's conclusion that plaintiff is capable of performing past sedentary work as a bookkeeper. (Tr. 19, 158).

## Conclusion

Based on the foregoing, the decision of the Commissioner is affirmed.

DATED this 12th day of January, 2006.

*Michael R. Hogan*
United States District Judge